OPINION
{¶ 1} This case comes before us on the appeal of Matthew Buckingham from a trial court decision ordering that he and his ex-wife, Jennifer, will both be residential parents and share equal parenting time for their minor child, Jonah. Matthew's single assignment of error is that the "trial court abused its discretion when it ordered that the parties shall equally divide parenting time on a month to month basis."
 {¶ 2} We have reviewed the record in detail and find the assignment of error has merit. Accordingly, the judgment of the trial court will be reversed.
 {¶ 3} Before commenting on specifics, we should note that this case, like many others, involves an ongoing war between divorced and bitter parents. As we have stressed in the past, such wars have "no victors and the ultimate casualties are the children, who stand to suffer deeply and permanently unless their parents can learn to control their hostility and anger towards each other." Bell v. Bell (June 5, 1998), Clark App. No. 97-CA-105, 1998 WL 288945, *1.
 {¶ 4} The war in the present case began in Arizona, where the parties were divorced on December 11, 1998. Jennifer originally received custody of Jonah, who was born on April 21, 1997. Matthew was granted reasonable out-of-state visitation rights. However, after Jennifer denied spring break visitation, Matthew filed a motion for change of custody. After holding several evidentiary hearings, the Arizona trial court awarded custody to Matthew in June, 2001. Among other things, the court noted that Jennifer had denied visitation, and had refused to grant access without prior court orders even after the motion for change of custody was filed. In addition, the court observed that Jennifer had moved nine times in less than three years, including two out-of-state moves. The court also considered taped conversations in which Jennifer treated the child in an emotionally abusive way. She had additionally communicated threats to commit suicide and had communicated hate speech to Matthew and his family, who have an African-American cultural background.
 {¶ 5} Based on the above findings, the Arizona court ordered that Matthew should take custody of Jonah on July 15, 2001. Because the parties then lived in different states, the court further ordered that Matthew would have Jonah from September through May and that Jennifer would have him during the summer months. At the time, Jonah was four years old.
 {¶ 6} Jennifer did not turn Jonah over as directed, and a contempt or habeas proceeding was filed in Arizona. About four months after Jennifer was ordered to turn over the child, she finally did so, and Jonah returned to Darke County, Ohio with Matthew. Subsequently, in April, 2002, Jennifer filed a petition in the Darke County Domestic Relations Court to register the Arizona divorce decree. On agreement of the parties, the Darke County court ordered registration of the original Arizona divorce decree and the Arizona entry (called a "minute entry") granting the change in custody to Matthew.
 {¶ 7} In August, 2002, Jennifer filed a motion, asking Darke County to assume jurisdiction and to modify visitation, due to the fact that she had moved from Arizona to Oakwood, Ohio. At the time, Jennifer asked for the court's standard order of visitation. An agreed entry was again filed, allowing the court to assume jurisdiction. The court then ordered temporary visitation in accordance with option one of its standard order, which basically allowed Jennifer to have visitation with Jason on alternate weekends.
 {¶ 8} Jennifer later moved to Darke County and filed a motion for increased companionship time. On the same day the motion was filed, a guardian ad litem was appointed. After the guardian ad litem issued his report, Jennifer filed an amended motion for increased companionship time in March, 2003, based on the guardian's recommendations. Pending a hearing on the motion, the trial court ordered temporary visitation per option two of its standard order, which allowed Jennifer to have visitation with Jonah on alternate weekends and Wednesday evenings.
 {¶ 9} Hearings on the pending motion were held in April and June, 2003. At that time, the court heard testimony from both parties, their mothers, Jennifer's aunt, the guardian ad litem, two witnesses who testified about threats that Jennifer had allegedly made, and a private investigator. After hearing the testimony, the trial court ordered equal parenting time. From the court's decision, we conclude that the court did not believe that Jennifer made threats about harming Matthew. The court ordered that Matthew would be the residential parent for July, 2003, and in alternating months after July. Likewise, Jennifer was ordered the residential parent for August, 2003, and for alternating months after August. The parent who was not the residential parent for a particular month was given option II visitation during the first and third weekends of the month.
 {¶ 10} In the entry, the trial court noted that the parties had poor communication skills and relational problems that hampered their ability to set differences aside. Nonetheless, the court felt the parties should try shared parenting. In particular, the court found persuasive the testimony and report of the guardian ad litem, who recommended equal parenting time, subject to a follow-up evaluation in several months.
 {¶ 11} On appeal, Matthew contends the court's decision was an abuse of discretion. Although Matthew's argument lacks focus, he appears to be claiming that the trial court failed to comply with requirements for modifying prior decrees allocating parental rights and responsibilities. Because this argument requires interpretation of a statute, we review the matter de novo, and do not accord deference to the trial court's conclusions of law.Miamisburg v. Wood (2000), 137 Ohio App.3d 623, 625, and StarBank, N.A. v. Matthews (2001), 144 Ohio App.3d 246, 250.
 {¶ 12} Modification of parental rights and responsibilities is governed by R.C. 3109.04(E)(1)(a), which states that:
 {¶ 13} "[t]he court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 {¶ 14} "(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
 {¶ 15} "(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
 {¶ 16} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
 {¶ 17} The Arizona minute entry is a prior decree allocating parental rights and responsibilities. The minute entry awarded sole care, custody and control of Jonah to Matthew, and, can, therefore, be modified only if the requirements of R.C.3109.04(E)(1)(a) are met.
 {¶ 18} Notably, R.C. 3109.04(E)(1)(a) requires a court to find that "a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child." The Ohio Supreme Court has indicated that "there must be a change of circumstances to warrant a change of custody, and the change must be a change of substance, not a slight or inconsequential change." Davis v. Flickinger (1997), 77 Ohio St.3d 415, 418
(emphasis in original).
 {¶ 19} The parents in this case were not subject to a shared parenting decree. Consequently, the trial court was required to find a change of "substance" in Jonah's circumstances or in Matthew's circumstances, since Matthew was the residential parent under the existing decree. However, the trial court did not mention R.C. 3109.04(E)(1), nor did the court make a finding that either Jonah's or Matthew's circumstances had changed. The court, therefore, failed to comply with the statutory requirements for modifying a prior custody order.
 {¶ 20} The only changes at issue were Jennifer's move from Arizona to Oakwood, and then to Darke County. However, these are not pertinent changes in circumstance for purposes of R.C.3109.04(E)(1). As we have previously stressed, the statute's clear intent is to:
 {¶ 21} "`"spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide a `better' environment. The statute is an attempt to provide some stability to the custodial status of children even though the parent out of custody may be able to provide a better environment."'" Gunter v. Clint (Jan. 4, 2002), Miami App. No. 2001 CA 32, 2002 WL 10446, *2, quoting from Davis,77 Ohio St.3d 415. R.C. 3104.09(E)(1)(b) does provide a mechanism under which a non-residential parent can ask the court for a shared parenting order. Jennifer's original motion did not seek shared parenting, but asked for modification of visitation, based on her move from Arizona to Oakwood, Ohio. In particular, Jennifer relied on the fact that out-of-state visitation was no longer appropriate because it confined visitation to summers and school breaks. This was a legitimate point, and the court appropriately decided to allow temporary visitation under option one of its standard order of visitation.
 {¶ 22} Subsequently, Jennifer filed an amended motion, asking for equal parenting time. This was not formally captioned as a motion for shared parenting, but the court's decision to modify custody treated the motion as one for shared parenting (although the court, unfortunately, did not apply the correct standards).
 {¶ 23} Under R.C. 3109.04(E)(1)(b):
 {¶ 24} "[o]ne or both of the parents under a prior decree allocating parental rights and responsibilities for the care of children that is not a shared parenting decree may file a motion requesting that the prior decree be modified to give both parents shared rights and responsibilities for the care of the children. The motion shall include both a request for modification of the prior decree and a request for a shared parenting order that complies with division (G) of this section. Upon the filing of the motion, if the court determines that a modification of the prior decree is authorized under division (E)(1)(a) of this section, the court may modify the prior decree to grant a shared parenting order, provided that the court shall not modify the prior decree to grant a shared parenting order unless the court complies with divisions (A) and (D)(1) of this section and, in accordance with those divisions, approves the submitted shared parenting plan and determines that shared parenting would be in the best interest of the children."
 {¶ 25} Thus, under this section, a court can modify a prior order and impose shared parenting. The trial court did not comply with this section, either. Instead, the court applied standards that govern visitation motions, i.e., the court simply evaluated whether shared parenting would be in Jonah's best interest.
 {¶ 26} In Bratz v. Bratz, 85 Ohio St.3d 40, 1999-Ohio-203, the Ohio Supreme Court held that modification of visitation is governed by R.C. 3109.051 and does not require a change in circumstances. To the contrary, the trial court applies the fifteen factors in R.C. 3109.051(D) and decides if the requested visitation is in the best interest of the child. Id. at paragraphs one and two of the syllabus. By applying the lesser standard for visitation motions, the trial court in this case improperly modified the custodial order without complying with the more stringent standards in R.C. 3109.04(E)(1)(a). Furthermore, even if the trial court had applied R.C. 3104.09(E)(1)(b), that section incorporates the requirements of R.C. 3109.04(E)(1)(a). This means that in order to allow shared parenting, the trial court must find a change of "substance" in the circumstances of either the child or residential parent and that modification is in the best interest of the child.Flickinger, 77 Ohio St.3d at 418. The statute creates a presumption in favor of retaining the existing residential parent unless modification is in the child's best interest and one of three situations listed in R.C. 3109.04(E)(1)(a)(i), (ii), or (iii) applies. As pertinent to this case, the only applicable scenario is that "[t]he harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." R.C. 3109.04(E)(1)(a)(iii). Again, since the trial court failed to comply with the statute, no such finding was made.
 {¶ 27} The trial court also erred when it stated that the matter was before it on pending cross motions by both parties regarding companionship time. See Doc. #41. The docket does not reflect that Matthew filed any motion regarding companionship time. Because the trial court failed to comply with R.C.3109.04(E)(1), the single assignment of error has merit and is sustained. Accordingly, the judgment of the trial court is reversed and the matter is remanded for further proceedings.
Wolff and Grady, JJ., concur.