[Cite as *Depascale v. Finocchi*, 2010-Ohio-4869.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| ANGELA M. DEPASCALE, | ) | |
| | ) | CASE NO. 08 MA 216 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| JOSEPH S. FINOCCHI, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS: Civil Appeal from Common Pleas
Court, Domestic Relations Division,
Case No. 05 DR 298.


JUDGMENT: Affirmed.


APPEARANCES:
For Plaintiff-Appellee: Attorney James Vivo
721 Boardman-Poland Rd.
Suite 201
Youngstown, OH 44512


For Defendant-Appellant: Attorney Shirley Smith
1399 E. Western Reserve Rd.
Suite 2
Poland, OH 44514


JUDGES:
Hon. Mary DeGenaro
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite


Dated: September 30, 2010

DeGenaro, J.

{¶1}    This timely appeal comes for consideration upon the record in the trial court, Appellant's brief and oral argument before this court.  Appellant Joseph S. Finocchi appeals the October 1, 2008 decision of the Mahoning County Court of Common Pleas, Domestic Relations Division, which found that there was not a change in circumstances among Joseph, Appellee, Angela M. Depascale, or their minor children that was sufficient enough to warrant a modification of the parties' parental rights and responsibilities.  The trial court's decision maintained the every-other-week parenting schedule from the 2005 Shared Parenting Plan, but made several modifications to the plan, including designating Joseph as the residential parent for medical and school purposes.

{¶2}    Joseph argues that the trial court's finding of no change in circumstances was against the manifest weight of the evidence.  Joseph further argues that the trial court abused its discretion by maintaining equal parenting time in the Shared Parenting Plan, and by deciding that the modified Plan was in the best interest of the children without support from the record.  Finally, Joseph argues that the trial court committed multiple errors in its calculation of child support.

{¶3}    In general, the overall detail of the trial court's entry, including its lengthy findings of fact, support its conclusions.  It is true that there are a variety of negative circumstances affecting the parties, primarily due to the parents' ongoing animosity and inability to communicate or cooperate.  However, these circumstances existed at the time of the original 2005 decision, and the trial court found Angela and Joseph's claims of extreme conflict to be exaggerated and lacking in credibility.  Although it is a close issue as to whether the ongoing and perhaps worsening conflict between the parents constituted a change in circumstances, the trial court did not abuse its discretion by not reallocating the parties' parental rights and responsibilities.  As for the Shared Parenting Plan, it appears that the testimony of several witnesses could have supported a decision to give more parenting time to Joseph, but such a decision would have to be made through a reallocation of parental rights and responsibilities, not through a modification of the terms of a shared parenting agreement.  Finally, Joseph's objections to the trial court's child support calculations were not raised in the trial court, and thus have been

waived on appeal. Moreover, the trial court's considerations of the parties' incomes and its decision not to implement a downward deviation from the standard child support calculation did not involve an abuse of discretion. Accordingly, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶4} Joseph and Angela were married on April 4, 1998, when the parties were 32 and 20 years old, respectively. The parties' have two children, Dominic, born on June 5, 1999 and Anna, born on April 30, 2001.

{¶5} The parents were separated around March of 2005. Both parents filed complaints for divorce seeking custody of the children, and the trial court consolidated the cases. According to an August 29, 2005 Magistrate's Order, the parties contested which parent should determine where the son went to school, and Angela cited various incidents where Joseph untimely delivered the children for parenting time. The magistrate decided that the son should attend Angela's local school. Both parties filed motions to set aside the decision.

{¶6} Joseph proposed a Shared Parenting Plan wherein the children would spend each weekday evening and night with Joseph, each weekday morning and afternoon with Angela, with each parent caring for the children every-other weekend. Angela proposed a Shared Parenting Plan wherein the children would reside with each parent for a full week, every other week, with exchanges on Sundays.

{¶7} The matter proceeded to trial on December 12, 13, 15, 16, 20, 21, and 22, 2005. The parties subsequently agreed to a Shared Parenting Plan, which largely followed Angela's suggested plan. The trial court's December 27, 2005 decision granted the divorce and incorporated the Shared Parenting Plan. The decision obligated Joseph to pay spousal support until June 30, 2008, and $794.64 per month in child support (including poundage). The Shared Parenting Plan provided an equal allocation of parental rights and responsibilities, with the children residing with each parent on alternating weeks, with exchanges on Sundays. The Shared Parenting Plan noted that no deviation from the standard child support amount was warranted due to the disparity in

the parties' incomes.

**{¶8}** In early 2007, the parties filed competing motions to find the other in contempt, to modify allocation of parental rights and responsibilities to be named sole residential parent, and requesting that the Shared Parenting Plan be terminated. Joseph alternatively requested to be named the residential parent for school and medical purposes, as well as seeking a decrease in child support.

**{¶9}** The trial court ultimately appointed Melissa Dinsio GAL on July 19, 2007and Timothy Khol as a psychological examiner on January 3, 2008.

**{¶10}** On March 21, 2008, subsequent to a hearing on Joseph's motion to modify child support based on changes in income, the trial court lowered Joseph's monthly child support obligation to $547.66 (including poundage), and noted that the amount would be recalculated upon the July 1, 2008 termination of spousal support. The worksheet continued to check "mother" as the residential parent and legal guardian, despite the shared custody arrangement.

**{¶11}** On June 4, 2008 Angela filed another motion to show cause, alleging that Joseph repeatedly violated the court-ordered Sunday 6:00 p.m. exchange time for the children. The issues in the parties' various motions proceeded to trial on June 17, 18, 25, and July 21, 2008.

**{¶12}** On the first day of trial, the parties presented testimony only related to the parents' contempt motions. The second day of trial began with Joseph, who testified as to his employment, living situation, parenting style, and the background of the 2005 divorce and shared-parenting plan. Joseph discussed his problems with Angela's actions regarding the children's medical issues, school issues, and the children's sleeping arrangements. Joseph described the merits of his living environment, local school, and extracurricular activities he provides for the children. Joseph discussed the conflicts between the parents regarding the children's schedules and their participation in extracurricular activities. Joseph described incidents that he believed indicated neglect or abuse of the children by Angela, and testified as to the involvement of Children Services. Joseph further described conflicts between the parents regarding exchanges of the

children and extracurricular activities, and communication problems.

**{¶13}** Angela also testified as to her employment, living situation, parenting style, the activities available for the children in her community, and the children's relationships with their extended family. Angela described the conflicts that have occurred between the parents around the children's extracurricular activities. Angela described the merits of her local school, her relationships with the teachers, and the children's rate of absenteeism when with Joseph. Angela described her actions regarding medical issues, the incidents that led Joseph to involve Children Services, and the conflicts between the parents regarding medical issues and exchanges of the children.

**{¶14}** The trial court additionally heard the testimony of Jennifer Carey, a school counselor who facilitates the children's group sessions for students with divorced parents; Richard W. Lillo, a licensed professional clinical counselor who has provided counseling services for the children from 2005 to the present; John Robert Elko, Jr., Angela's fiancé; Maria Depascale, Angela's mother; Timothy Khol, a licensed psychologist who testified regarding the psychological custody evaluation that he conducted with the parties; Anna Marie Beres, a neighborhood friend of Joseph; and Melissa D. Dinsio, the Guardian ad Litem for the children.

**{¶15}** On August 15, 2008 the trial court issued an interim order, determining that the Shared Parenting Plan should continue, and modifying the Plan to designate Joseph as the residential parent specifically regarding school and health issues, and changing the child-exchange time from Sundays at 6:00 p.m. to Wednesdays at 7:00 p.m. The order also suggested an alternative shared parenting schedule, and requested that the parties filed proposed shared parenting schedules. Angela filed a notice of appeal from this order, but her appeal was eventually dismissed for lack of prosecution. Angela filed a renewed motion for contempt on August 19, 2008.

**{¶16}** On August 26, 2008, Joseph filed a memorandum on parenting time, requesting primary parenting time with a standard visitation order for Angela. Joseph alternatively requested the parenting schedule used prior to the divorce, wherein the children would stay with Joseph every night, with Angela during the afternoons after school, and with each parent on alternating weekends. Joseph also filed a motion for

contempt, alleging that Angela violated the shared parenting order by failing to adequately provide for the children's hygiene, feeding, and sleeping arrangements, and alleging that Angela has prohibited the children from calling Joseph on the telephone.

{¶17} On October 1, 2008, the trial court entered a Final Order of Modification of Shared Parenting Plan and Contempt. The trial court's entry denied the parties' original motions to show cause, denied Joseph's August 26, 2008 motion to show cause, but granted Angela's August 19, 2008 motion, and found Joseph in contempt for his repeated failure to follow the parenting schedule. The trial court sentenced Joseph to three days in jail, to be purged conditioned on father's cooperation with the amended shared parenting orders.

{¶18} The trial court held that the facts presented by the parties did not sufficiently indicate a change in circumstances, and declined to reallocate parental rights and responsibilities or terminate the Shared-Parenting Plan. The trial court ordered that the Shared Parenting Plan continue on a weekly basis, with exchanges on Wednesdays around the children's school schedule, and on Wednesdays at 7:00 p.m. during the summer and eliminated midweek parenting time.

{¶19} Joseph was designated as the residential parent for medical decisions and school placement purposes. The trial court ordered that the children are not permitted to stay overnight at third-party residences on any school night. The trial court further ordered that the parents are to make prior agreements to the children's extracurricular activities, and that one parent is to provide the transportation for their activities if the location is inconvenient to the other parent's residence. The trial court modified the amount of child support in light of Angela's change in income from the June 30, 2008 termination of spousal support. The trial court ordered that Joseph pay $685.53 per month for child support.

{¶20} After Joseph timely filed a notice of appeal, he moved for a stay of the appeal, representing the resolution of motions pending before the trial court could resolve the matter. We granted a stay until March 9, 2009. After several extensions sought by Joseph's counsel to file both the transcript and his brief, we granted Joseph leave to file his brief instanter September 25, 2009. After determining that Angela would not be filing

a brief, the matter was set for oral argument on July 14, 2010. Accordingly, this court may consider Joseph's statement of the facts and issues as correct and reverse the judgment if Joseph's brief reasonably appears to sustain such action. App.R. 18(C).

### Reallocation of Parental Rights and Responsibilities

{¶21} In his first assignment of error, Joseph asserts:

{¶22} "The trial court erred in finding no change in circumstances, as and against the manifest weight of the evidence, thereby failing to terminate the shared parenting plan and further failing to grant full legal custody to the defendant/father."

{¶23} R.C. 3109.04(E)(1)(a) governs the modification of an existing decree allocating parental rights and responsibilities, and states, in pertinent part:

{¶24} "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

{¶25} "(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

{¶26} "(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

{¶27} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

{¶28} Thus, multiple steps must be satisfied in order for the trial court to reallocate parental rights in the context of a shared parenting agreement: (1) there must be an initial

threshold showing of a change in circumstances of the child or either parent, brought about by facts that have changed since the date of the prior decree or which were unknown to the court at that time; and (2) if circumstances have changed, the court may reallocate parental rights as necessitated by the best interests of the child. Id. "The statute also requires the court to 'retain the residential parent designated by the prior decree' unless (1) the 'modification is in the best interest of the child' and (2) one of three additional factors applies. *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, at ¶21.

**{¶29}** The intent of R.C. 3109.04 is to spare children from a constant tug of war between parents who may file a motion to modify parental rights and responsibilities each time the parent without full custody thinks he or she could provide the children with a better environment. Id. at ¶34; *Surgenavic v. Surgenavic*, 7th Dist. No. 08 MA 29, 2009-Ohio-1028, at ¶14, citing *Wyss v. Wyss* (1982), 3 Ohio App.3d 412, 416, 445 N.E.2d 1153. Even when both parents in a shared parenting agreement request a reallocation of parental rights and responsibilities, a change in circumstances still must be found before the trial court may grant either party's request. See *Fisher* at ¶2, 37.

**{¶30}** A trial court has broad discretion in its determination of parental custody rights. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. Because custody issues are some of the most difficult and agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence and such a decision must not be reversed absent an abuse of discretion. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997-Ohio-260, 674 N.E.2d 1159. Therefore, a trial court's custody determination should not be disturbed unless it constitutes an abuse of discretion. *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 23, 550 N.E.2d 178.

**{¶31}** With respect to this Court's duty of deference to the trial court in custody determinations, the Ohio Supreme Court has stated: "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the

parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct." *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. (Internal citations omitted.)

{¶32} After making extensive findings of fact, the trial court stated in its conclusions of law, that there was no change of circumstances to warrant a reallocation of parental rights and responsibilities, and did not continue on to analyze the children's best interests or other factors.

{¶33} In order for a trial court to make the threshold determination that there has been a change of circumstances, the movant need not prove that there had been a "substantial" change in circumstances, but "the change must be a change of substance, not a slight or inconsequential change." *Davis*, supra, at 418. The phrase, "change in circumstances," is generally "intended to denote an event occurrence, or situation which has had a material and adverse effect upon a child." *Rohrbaugh v. Rohrbaugh* (2000), 136 Ohio App.3d 599, 604-605, 737 N.E.2d 551. The trial court has the broad discretion to determine whether sufficient changed circumstances have occurred between the parents in order to proceed past this threshold question. *Davis*, at 418.

{¶34} "Ohio courts have considered a variety of factors that are relevant to the change-in-circumstances requirement of R.C. 3109.04(E)(1)(a). For example, relevant factors presented in other cases have included 'a new marriage that creates hostility by the residential parent and spouse toward the nonresidential parent, frustrating attempts at visitation,' *Davis,* 77 Ohio St.3d at 419, 674 N.E.2d 1159; the advancement of a child from infancy to adolescence, *Perz v. Perz* (1993), 85 Ohio App.3d 374, 377, 619 N.E.2d 1094; unruly behavior of the residential parent involving the police, *Butler v. Butler* (1995), 107 Ohio App.3d 633, 669 N.E.2d 291; and fights between the residential parent and a new spouse that required police intervention, along with the fact that the residential parent had moved six times in two years, *Dedic v. Dedic* (Jan. 27, 1999), Wayne App. No. 98CA0008, 1999 WL 33445." *In re Brayden James*, 113 Ohio St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467, at ¶18.

{¶35} In this court's recent history, we have found that a combination of factors must be considered to amount to a change in circumstances. See, e.g., *Gomez v. Gomez*, 7th Dist. No. 08 NO 356, 2009-Ohio-4809; *Burnip v. Nickerson*, 7th Dist. No. 07-CO-42, 2008-Ohio-5052.

{¶36} In *Gomez*, both parties had remarried, the mother had changed residences, there were many examples of increased hostility between the father and the new step-father, both parties were repeatedly untimely for exchanges, the mother had been found in contempt, the mother attempted to block the father from receiving medical information about the children, the mother prevented the father from having three of his five weeks of summer visitation, police intervention was repeatedly sought, and Children Services was contacted regarding child abuse allegations. *Gomez* at ¶23-33. We held that the combination of these events constituted a change in circumstances, and concluded that the trial court abused its discretion in not making such a finding. Id. at ¶34.

{¶37} In *Burnip*, the mother alleged a change in circumstances because the father kept the children in daycare or under the care of the paternal grandparents most of the time, the father smoked around the children and did not adequately care for their clothing, hygiene or the home, the father failed to attend the children's school activities, and inadequately cared for the daughter's medical issues. *Burnip* at ¶3, 23, 26-37. This court noted that many of the mother's complaints were of circumstances that existed prior to the parties' dissolution, and that other witness testimony rebutted some of the mother's other claims. Id. at ¶40-41. This court concluded that the trial court did not abuse its discretion in finding that a change of circumstances had not occurred between the parties. Id. at ¶42.

{¶38} The variety of factors in the above cases demonstrates that the presence of any one factor alone will not dictate whether there has been a change of circumstances between the parties. The specific and unique circumstances of the parties will always frame the issue, and the occurrence of certain events may or may not constitute a change in circumstances depending on the context in which they occurred, and depending on the surrounding totality of the circumstances.

**{¶39}** Here, Joseph points out a number of factors that he argues support a finding of a change in circumstances. It is difficult to examine whether there has been a change in circumstances in this case because the circumstances of the parties at the time of the 2005 Shared Parenting Plan are largely not in the record. In the more recent proceedings, Joseph not only had the burden of proving the negative circumstances of the parties, but also had the burden of proving that those circumstances were different enough and not contemplated by the trial court at the time of the 2005 proceedings to warrant a finding of changed circumstances in 2008. In view of this problem, the trial court noted during the proceedings that it did not have the prior history of the case, and asked that the parties provide background information.

**{¶40}** Although the parties did not supply the transcripts for the proceedings that led up to their divorce and original Shared Parenting Plan in 2005, the transcript of an August 26, 2005 hearing regarding school attendance of the children was included in the record. During that hearing, it was mentioned that Angela worked part-time at the time of the divorce, that Angela's work interfered with her ability to be with the children at pertinent times, such as exchange times or school pickup times, necessitating Depascale's constant assistance, and that Joseph had issues with "some of the things he thought was [sic] occurring at mom's house, * * * some issues with sleeping arrangements, alleged boyfriend here [sic] and also some report of so-called living conditions at the grandmother's house where * * * they were residing at one point." The parents were already experiencing conflict and problems regarding the exchanges of the children. At that 2005 hearing, the trial court stated that the parents were not cooperating and "aren't communicating at best." Though limited, this information provides a larger context for Joseph's current claims, and demonstrates that many of the new circumstances described by Joseph existed prior to the 2005 decree, as was the case for many of the claims in *Burnip*.

**{¶41}** As for Joseph's first argument, he asserts that there has been a change in circumstances and a failure of the Shared Parenting Plan because Angela has the children sleeping in multiple residences each week, often on the floor. Joseph also points out that these sleeping arrangements are caused by Angela's part-time job, which

sometimes requires her to leave the home before dawn.

{¶42} At trial, both parties testified that Angela keeps the children overnight at Depascale's residence approximately two times per week due to Angela's work schedule. Depascale testified that the children used to sleep on a mattress on the floor at her house, but noted that she had purchased an additional bed shortly before the time of trial, so that the children would no longer have to sleep on the floor. Lillo, the family counselor, testified that Joseph brought the children to counseling around July of 2005, and voiced concerns at that time regarding "living conditions at the mom's and the grandmother's house." Lillo stated that Joseph raised issues during the beginning of counseling regarding the children's sleeping arrangements, staying with Depascale, and sleeping on the floor.

{¶43} Lillo's testimony indicates that Joseph's concerns were voiced before the 2005 Shared Parenting Plan, and this particular argument thus does not involve "facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree." R.C. 3109.04(E)(1)(a). See, also, *Burnip*, at ¶40. Moreover, the trial court's decision indicates that it did take the objectionable sleeping arrangements into account. The trial court considered this issue to be related more to the terms of the Shared Parenting Plan than custody, and specifically included instructions in the Amended Shared Parenting Plan that the parties are not permitted to keep the children at a third-party's home on any school night. Instead, the Plan instructs: "If either parent is gone overnight during a school weeknight, the other parent shall have the children."

{¶44} Joseph also argues that a change of circumstances occurred due to the fact that Depascale moved to a residence further away from Angela's residence. According to testimony during trial, Depascale lived in the same apartment building, across the hall from Angela, until approximately October of 2007. Depascale then moved to a residence that is a two or three minute drive from Angela's residence. Joseph argues that this change is significant, as Depascale provides extensive support and assistance to Angela. Although Depascale's distance of one or two miles would not be much of an obstruction of Angela's access to Depascale, it could be seen as a big change given that Angela possibly had immediate access to Depascale at most times in the previous living

arrangement. Given that all parties consistently testified that Depascale is the primary person in Angela's support network, Depascale's location could be a significant factor. However, there was no indication during trial that Angela's reliance on Depascale, or the children's time spent with Depascale, either increased or decreased due to the move. Although Depascale's move was a change, there is no testimony indicating how such a change impacted Angela or the children.

**{¶45}** Next, Joseph asserts that there has been a change of circumstances warranting a modification of custody because Angela has potentially subjected the children to neglect and abuse. Specifically, Joseph points out that upon his instigation Lillo made reports to the Children Services Board as required by statute on two separate occasions in 2006, once regarding concerns of nutrition and hygiene and once due to a report that Elko and Angela exposed themselves to the children. The record indicates that these two reports, as well as a third report predating the 2005 decree, were made at Joseph's instigation.

**{¶46}** In a June 29, 2005 police report, Joseph claimed that the children stated that Elko hit them in the neck. According to Joseph, only he spoke to the police, the children were not interviewed, and no one could locate any signs of injury on the children. Children Services sent a letter on June 30, 2005 stating "Referral rejected. Referral does not meet criteria for Children Services involvement." This instance was not thoroughly addressed in testimony, as it predated the December 2005 decree.

**{¶47}** On February 24, 2006, a claim of medical neglect was made. In a letter dated March 17, 2006, Children Services stated that its case disposition was unsubstantiated. According to a letter written by Lillo, Children Services contacted Lillo on March 17, 2006 and requested information regarding the children, presumably regarding this claim. Lillo responded on April 11, 2006, and noted that there were some issues reported to him by Joseph regarding the children's nutrition and hygiene, such as the children being given licorice and cereal as a meal, the children complaining of being hungry, and stating that they were not bathed on a daily basis. Lillo testified that Angela's feeding of the children was an original concern when the children were brought to him, but noted that the nutritional issue "has not been brought up in a while."

**{¶48}** On July 26, 2006, Joseph and then the children reported to Lillo that Angela and Elko were committing inappropriate behavior, described by Lillo as "wiggling their butts or pulling their pants down and various things and maybe showing of a private part." Lillo made a report to Children Services. In a letter to Angela dated August 9, 2006, Children Services reported: "Based upon our findings: The case will be closed. Suggested follow up services: Find a counselor for the children that you and your ex-husband can agree upon. Use the court as needed to mediate." Elko denied exposing himself or otherwise acting inappropriately in front of the children. Dinsio testified that when she asked the son about his report of Angela and Elko exposing themselves, the son told Dinsio that the incident did not actually happen, and refused to speak further on the subject. When Dinsio asked the daughter about the incident, the daughter told Dinsio that the son had reported the exposure incident because "he thought it would make daddy happy."

**{¶49}** Although all of Joseph's reports of abuse were summarily closed or found to be unsubstantiated, they could support a finding of a change in circumstances. Repeated reports of child abuse could indicate new problems, either of the parent being reported or of the parent making the report of abuse. For example, in *Gomez*, this court found reports to Children Services to be significant, regardless of the fact that they were unsubstantiated. *Gomez* at ¶33. However, the unsubstantiated reports of child abuse in *Gomez* were accompanied by a variety of other factors further indicating a change in circumstances in order for this court to conclude that the trial court's decision was an abuse of discretion. Moreover, this case is somewhat distinguishable from *Gomez* and more aligned with *Burnip* in that Joseph's unsubstantiated reports of abuse or neglect occurred both before and after the 2005 decree.

**{¶50}** Next, Joseph argues that a change in circumstances has occurred due to Angela's deviation from the Shared Parenting Plan, specifically through her inadequacies related to school, medical concerns, and the children's extracurricular activities. The parties' testimony was extensive and widely divergent on this topic, and inspired commentary from the trial court as to the questionable credibility of both parents.

{¶51} Joseph provided various examples where he believed that Angela either overreacted or underreacted to the children's health issues or illnesses, and opined that Angela cannot recognize what proper medical care is. Witnesses such as Khol and the GAL opined that Angela generally acted appropriately in response to the children's health issues. Khol noted that the children were appropriately medically cared for by both parents, that the parties had different parenting styles, and that the main problem on this topic was the conflict between the parents.

{¶52} Joseph raised additional concerns at trial that Angela attempted to keep Joseph from receiving medical information regarding the children, either by failing to inform Joseph of visits to the doctor, or by specifically instructing medical providers to contact her and to not contact Joseph. Angela conceded that she had sometimes told medical providers to communicate primarily through her in order to avoid conflict, but denied disallowing medical providers to contact Joseph. Angela testified about a more recent incident where the son was ill, Joseph did not inform her of the condition or his visit to the hospital, and Angela was denied access to the son's information at the hospital.

{¶53} As for the school issue, Joseph testified to several incidents where Angela failed to update contact information, and failed to adequately prepare the children for school, in terms of vaccinations and registration, risking their suspension from school. Joseph testified that Angela did not ensure that the children had money for school lunches, which again required that Joseph take action to resolve the situation. Joseph also alleged that the children's scholastic performance deteriorates whenever they are with Angela. Angela countered that she actively encourages the children's scholastic efforts, and has worked with teachers who have recommended additional educational programs for the son. Angela testified that the children's absences from school during the last school year were primarily during Joseph's parenting time, with 13 of the daughter's 15 absences and 13 of the son's 17.5 days of absence occurring with Joseph.

{¶54} Each party accused the other of refusing to allow the children to participate in extracurricular activities that the other parent had set up. Both parties accused the other of not providing them with information about the activities, and conversely denied claims that they had in fact been offered information about the activities and nonetheless

refused. Angela's testimony indicated that she will not take the children to Joseph's soccer league due to distance, scheduling conflicts, and because Joseph publicly berated her when she did take the children to the soccer league. Angela alleged that Joseph will not take the children to Angela's activities because he had not been consulted first, or otherwise did not approve of them. Dinsio noted that both parties supported the idea of the children participating in a variety of extracurricular activities, but "are both probably a little control hungry in that situation." The trial court noted, "I am holding you both accountable for the fact that you are acting like children. In whatever you do, she doesn't participate. In whatever she does, you don't participate in."

{¶55} As with the sleeping arrangements, the parents' communication and cooperation surrounding education, activities and medical issues was an issue that was raised and known to the court at the time of the 2005 decree. For example, Joseph testified that he had requested certain terms in the 2005 Shared Parenting Plan due to "The past history of the medical care that would not be provided to the children for those exact same reasons; incorrect information, not following the physician's instructions, not keeping scheduled appointments. * * *. What prompted me to write that into the decree was I did not want past history to repeat itself." And again, as with the children's sleeping arrangements, the trial court considered this issue to relate more to the Shared Parenting Plan than to custody, and modified the Shared Parenting Plan so that Joseph would be the primary contact and have the primary responsibility in making all decisions regarding the children's school and medical needs.

{¶56} Next, Joseph argues that a change in circumstances occurred due to further deterioration of communication between the parties, and due to Angela's alienation of the children from Joseph. Regarding the alienation issue, Lillo testified that the children reported to him that Angela removes Joseph's name from children's drawings. Angela testified that Joseph has frequently been argumentative and derogatory toward her in front of the children, again both before and after the 2005 decree. Khol testified that the children reported "that they often hear their dad making derogative statements to mother and about mother, such as about her mental health, about being crazy, mixed up in the head, this sort of thing." Khol opined that Joseph has an "inability to communicate

respect and acceptance of their mother."

{¶57} Both parties testified to repeated instances of breakdowns in communication. Angela testified that she tries to communicate with Joseph but "it's just impossible to try to [communicate] with him. It's either his way or no way." Joseph testified that he cannot communicate with Angela because she "freak[s] out" and attempts to contact him too frequently through his work phone and email. Joseph did concede that his only email address was through work. Angela testified that she sends Joseph information via certified letters because he otherwise refuses to engage with her. The court noted the inability to communicate was mutual. Khol opined that the main obstacle to the Shared Parenting Plan was the parties' inability to coordinate or communicate, and concluded that one parent should have custody of the children because he did not believe that "this is a couple that can handle shared parenting."

{¶58} In addition to the contact with Children Services, both parties have contacted the police numerous times over disagreements, or when the other parent is late in arriving to exchange the children. Joseph and the maternal grandmother have also repeatedly called or threatened to call the police to eject each other from their property during exchanges of the children.

{¶59} Both Joseph and Angela filed contempt motions for failure to comply with exchange times, which the trial court initially denied. Subsequent to the June 2008 hearings, both parties filed renewed contempt motions, and the trial court found Joseph in contempt for his repeated failure to follow the parties' parenting schedule. Angela suggested that the parties change the exchange time to Wednesdays after school to alleviate timing issues. Joseph refused to suggest a different child-exchange time or any other changes, stating that it will not work no matter what changes they make.

{¶60} Again, within the context of the parties' entire relationship, Joseph only established that the parties continue to have a terrible relationship, and failed to establish that the relationship deteriorated or changed since the 2005 decree. It does seem that the conflict between the parties, regardless of whether it constitutes a marked change from prior years, generally indicates that the terms of the Shared Parenting Plan is not working. However, the trial court addressed this problem through a modification of the

terms of the Shared Parenting Plan.

{¶61} Finally, Joseph argues that there has been a change in circumstances because a Psychological Custody Evaluation indicated that Angela has certain intellectual and emotional deficiencies, and that the children have a primary emotional attachment to Joseph. Khol performed a Psychological Custody Evaluation of Angela, Joseph, and the children. Khol found both parents to have various negative aspects to their personalities. Khol found that the children were well-adjusted, "strikingly well-behaved," and had a close affectionate bond with one another, possibly compensating for the conflict between the parents. Khol testified that the children expressed a primary attachment with Joseph.

{¶62} Khol's evaluation reported how each party functioned on a general level, and did not indicate that the parties' psychological functioning or intelligence affected the circumstances of the parties differently since the 2005 judgment. Thus this factor does not affect the trial court's consideration of a change in circumstances.

{¶63} Looking at all of the factors enumerated by Joseph, he has presented a problem of overall friction, hostility and lack of communication between the parents, which certainly is not a situation that promotes the best interests of the children. As noted by the Second District, an ongoing war between bitter divorced parents, such as the war apparently going on here, has "no victors and the ultimate casualties are the children, who stand to suffer deeply and permanently unless their parents can learn to control their hostility and anger towards each other." *Buckingham v. Buckingham*, 2d Dist. No. 1626, 2004-Ohio-1942, at ¶3.

{¶64} These are unfortunate circumstances, but Joseph's arguments do not indicate a *change* in circumstances. Joseph's arguments regarding the children's sleeping arrangements, Angela's reliance on the grandmother for child care and support, the conflicts created by Angela's work schedule, and lack of communication and cooperation between the parties in medical, school, and all other situations were all circumstances that existed prior to and at the time of the 2005 decree and Shared Parenting Plan. Additionally, the trial court repeatedly communicated its belief that the parties' depiction of their mutual conflict was exaggerated to a certain extent and thus

unreliable.

{¶65} Because of this, and because the trial court found both parents provided a loving and supportive environment for their children, it was reasonable for the trial court to conclude that the allocation of parental rights and responsibilities should not be changed, and that instead certain terms of the Shared Parenting Plan should be changed to address the parents' concerns, especially since this was the first time that the trial court was asked to review the original 2005 decree, and a less disruptive change seems reasonable.

{¶66} The trial court's decision was well-reasoned, thorough, and based upon the evidence. Thus the trial court did not commit an abuse of discretion by concluding that the circumstances presented by the parties did not constitute a change in circumstances for the purposes of R.C. 3109.04(E)(1)(a). Because the trial court did not commit reversible error regarding this threshold issue, the trial court was not obligated to consider whether a particular reallocation of parental rights and responsibilities was in the best interest of the children. We therefore will not address the second portion of Joseph's assignment of error regarding the best interest of the children. Accordingly, Joseph's first assignment of error is meritless.

### Shared Parenting Plan

{¶67} In his second assignment of error, Joseph asserts:

{¶68} "The trial court further abused its discretion in determining that the shared parenting plan remains in the best interest of the children and that plaintiff/mother should receive equal parenting time despite a clear showing to the contrary under statutory factors."

{¶69} Joseph asserts that the trial court abused its discretion in finding that its modification of the Shared Parenting Plan was sufficient to protect the best interests of the children. The trial court exercised its discretion to modify the Shared Parenting Plan pursuant to R.C. 3109.04(E)(2)(b), which states:

{¶70} "The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion

at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. Modifications under this division may be made at any time. The court shall not make any modification to the plan under this division, unless the modification is in the best interest of the children."

**{¶71}** Although R.C. 3109.04(E)(1)(a) requires a change in circumstances in order to modify a prior allocation of parental rights and responsibilities, R.C. 3109.04(E)(2)(b) only requires a consideration of the best interest of the children and does not require a finding of a change in circumstances in order to modify the terms of a shared parenting plan. The terms of a shared parenting plan govern the way in which the parents' respective rights and responsibilities are carried out. *Fisher*, supra, at ¶30. The terms include things such as "the child's living arrangements, medical care, and school placement." Id. See, also, R.C. 3109.04(G). A modification that changes the allocation of parental rights and responsibilities cannot be executed through the terms of a shared parenting agreement, and requires a change in circumstances pursuant to R.C. 3109.04(E)(1)(a). *Fisher* at ¶22-25.

**{¶72}** The trial court's findings of fact addressed the many conflicts between the parents, which primarily arose during the exchanges of the children, decisions on medical and school issues. Upon a thorough consideration of the best interest of the children, the trial court modified some terms of the parties' Shared Parenting Plan by changing the exchange date from Sunday to Wednesday, eliminating the mid-week parenting time, and designating Joseph as the residential parent for school and health decisions. The trial court's modification reduced the chance of either parent being untimely for the exchange, reduced the interaction between the parents in the presence of the children, and eliminated power struggles over medical and school decisions.

**{¶73}** Joseph asserts that the amended Shared Parenting Plan fashioned by the trial court constituted an abuse of discretion, but fails to articulate what modification by the trial court would not have been an abuse of discretion. However, in the final conclusion of Joseph's brief, Joseph requests that this court sustain his second assignment of error and cause the Shared Parenting Plan to be modified so that Angela receives the children every other weekend, with a mid-week visit, in accordance with a

standard parenting time order. Joseph has attached an example parenting time schedule, pursuant to R.C. 3109.051, that he believes demonstrates the more appropriate parenting schedule in this case.

{¶74} A standard parenting time order in accordance with R.C. 3109.051 is only applicable in the event that there is no shared parenting agreement, and one parent is named the residential parent. R.C. 3109.051(A). The result that Joseph promotes in this assignment of error is identical to that which he promotes in the event of a reallocation of parental rights and responsibilities: full time residence with Joseph and visitation for Angela. Joseph is therefore repeating his argument for a reallocation of parental rights and responsibilities from his first assignment of error. As with the first assignment of error, Joseph's argument here is meritless.

### Child Support

{¶75} In his third assignment of error, Joseph asserts:

{¶76} "The trial court erred in its calculation of child support."

{¶77} Joseph contends that the trial court incorrectly completed the Ohio Child Support Worksheet that accompanied the trial court's final order. Specifically, Joseph argues that the trial court erroneously indicated in the worksheet heading that only Angela was designated as the residential parent and legal guardian, failed to subtract "Deviation shared" for Joseph's 50% shared parenting time, and failed to consider Angela's increased income based on her change in employment. Joseph thus does not object to the trial court's decision to modify child support, and only objects to the trial court's calculation of the resulting modified child support amount.

{¶78} Joseph has waived this issue for purposes of appeal. It is axiomatic that a reviewing court will not consider any error that a party failed to bring to the trial court's attention at a time when that alleged error could have been addressed by the trial court. See, e.g., *Niskanen v. Giant Eagle, Inc.*, 122 Ohio St.3d 486, 2009-Ohio-3626, 912 N.E.2d 595, at ¶34.

{¶79} The trial court modified child support in its October 1, 2008 order sua sponte in accordance with the March 21, 2008 order that child support was to be recalculated

after the termination of spousal support. Thus, the change in child support was not made pursuant to any motion by Joseph. Moreover, Joseph did not submit any request or argument for a particular child support amount, nor did he request a downward deviation at any point in the June 2008 proceedings. During the June 2008 proceedings, the trial court did mention that it planned to recalculate child support due to the termination of spousal support, and stated that it would use the income figures from the March 2008 calculations. Joseph assented to the trial court's statements, and no further discussion was had. As such, Joseph has waived this issue for appeal. Accordingly, Joseph's third assignment of error is meritless.

## Conclusion

**{¶80}** The trial court did not abuse its discretion in finding that there was not a substantive change of circumstances warranting a reallocation of parental rights and responsibilities, nor was its modification of the Shared Parenting Plan an abuse of discretion. Joseph's argument regarding the calculation of child support argument is waived. Accordingly, the judgment of the trial court is hereby affirmed.

Vukovich, P.J., concurs.

Waite, J., concurs.